UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JANE DOE,

                              Plaintiff,

                                                          **MEMORANDUM & ORDER**
            - against -                                   1:16-CV-264 (PKC)

NATIONAL CONFERENCE OF BAR
EXAMINERS, PENNY GESSLER, and
ERICA MOESER,

                              Defendants.
--------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Plaintiff Jane Doe, proceeding *pro se*[1] and by pseudonym, brings this action against Penny

Gessler and Erica Moeser (the "Individual Defendants"), and the National Conference of Bar

Examiners ("NCBE"), alleging that Defendants refused to complete Plaintiff's character and

fitness investigatory report for her admission to the District of Columbia bar.  Defendants move to

dismiss.  For the reasons that follow, the Court grants Defendant's motion to dismiss the First

Amended Complaint for lack of personal jurisdiction, and dismisses this action in its entirety.

---

[1] Generally, the Court is obligated to read a *pro se* plaintiff's complaint liberally and interpret it to raise the strongest arguments it suggests. *Erickson v. Pardus*, 551 U.S. 89 (2007). But here, although she is proceeding *pro se*, according to the Supreme Court of Ohio's attorney registration records, Plaintiff is a licensed, albeit inactive, attorney. *See Supreme Court of Ohio / Attorney Registration Information*, http://www.supremecourt.ohio.gov/AttySvcs/ AttyReg/Public_AttorneyDetails.asp?ID=0084000#Inactive (last visited December 29, 2016). Thus, Plaintiff is not entitled to the same degree of liberality normally given to a non-attorney *pro se* party. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010); *Sullivan v. IStoreGreen, LLC*, 14-CV-7163, 2015 WL 152902, at *1 (E.D.N.Y. Jan. 12, 2015); *Johnson v. MediSys Health Network*, 10-CV-1596, 2013 WL 1334420, *1 n.1 (E.D.N.Y. Mar. 29, 2013).

# BACKGROUND[2]

## I.    FACTUAL BACKGROUND

This case concerns Defendants' alleged refusal to process Plaintiff's character and fitness application—a requirement for admission to practice law in the District of Columbia—because of an improperly executed signature page. According to Plaintiff's Amended Complaint, the District of Columbia required her to use the NCBE's services for a character and fitness investigation in connection with her bar admission petition.[3] (Dkt. 11 ("Am. Compl.") ¶ 6.) On December 16, 2010, presumably after reviewing Plaintiff's character and fitness application, NCBE contacted Plaintiff to inform her that she had improperly executed the application's signature page, and requested that she "reply immediately and submit a newly signed signature page" or else "her request for an investigatory report would not be honored[.]" (*Id.* ¶ 7.)[4] After Plaintiff and the

---

[2] The facts contained in this section are drawn from Plaintiff's Amended Complaint and the parties' sworn affidavits on the issue of personal jurisdiction. At this stage, Plaintiff's allegations are generally accepted as true, but "on a motion to dismiss for lack of jurisdiction, where defendant rebuts [a plaintiff's] unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and [a plaintiff does] not counter that evidence—the allegation may be deemed refuted." *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 420 (S.D.N.Y. 2006) (internal quotation marks and citation omitted). "In deciding a pretrial motion to dismiss for lack of personal jurisdiction[,] a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 170 (E.D.N.Y. 2015) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013)); *Fischer v. Stiglitz*, 15-CV-6266, 2016 WL 3223627, at *2 (S.D.N.Y. June 8, 2016) ("In deciding a Rule 12(b)(2) motion, the Court may rely on materials that are outside the pleadings, including any affidavits submitted by the parties.").

[3] According to the application form currently available on the NCBE's website, a character and fitness investigation determines an individual's "ability to meet the professional responsibilities of a lawyer." *Request for Preparation of a Character Report*, *available at* http://www.ncbex.org/character-and-fitness/ (last visited December 15, 2016).

[4] Although Plaintiff's Amended Complaint refers repeatedly to her character and fitness application, it is devoid of basic information regarding the application, such as the date on which she sent it to the NBCE. But, because the Court deems the character and fitness application as

NCBE exchanged various emails, the NCBE "refused to proceed" with Plaintiff's application. (*Id.*) On June 3, 2014, the District of Columbia's Committee on Admissions wrote to Plaintiff "indicating that the District of Columbia would complete the processing of [her] application for admission . . . if the NCBE completed and submitted" her character and fitness report. (*Id.* ¶ 9.) The NCBE then refused to cooperate with Plaintiff, and never provided the character and fitness report to the District of Columbia Committee on Admissions. (*Id.* ¶ 10.)

Based on these allegations, Plaintiff claims that Defendants are liable under common law for: abuse of power and *ultra vires* actions; breach of contract between Plaintiff and NCBE; fraud and misrepresentation; negligence; and breach of contract between NCBE and the District of Columbia, of which Plaintiff asserts she was a third-party beneficiary. (*Id.* ¶¶ 14-18.) Plaintiff alleges that in addition to the NCBE, the Individual Defendants are liable because "Defendant Gessler is responsible for assembling all Character and Fitness Reports at the NCBE" and "Defendant Moeser is Defendant Gessler's supervisor." (*Id.* ¶ 6.) She seeks damages "in the sum of $1,000,000.00, plus interest calculated from February 8, 2011 through the date on which this dispute is finally resolved." (*Id.* at ECF 8.)

## II.    RELEVANT PROCEDURAL HISTORY

Plaintiff filed the instant action on November 27, 2015 in Kings County Supreme Court. (Dkt. 1-2 at ECF 2.) On January 19, 2016, Defendants removed the action to this Court based on diversity jurisdiction because Defendants are residents of Wisconsin, Plaintiff is a resident of New

---

incorporated by reference in Plaintiff's Amended Complaint, the Court may consider its contents. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). According to the application, the NCBE received Plaintiff's application on September 27, 2010—more than five years before the filing of Plaintiff's State court complaint. (Dkt. 24-1 at ECF 3.)

Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

York, and Plaintiff seeks damages in excess of $75,000. (Dkt. 1.) On February 18, 2016, the

Court held a pre-motion conference to discuss Defendants' anticipated motion to dismiss. Plaintiff

failed to appear, informing the Court that she had not received notice of the conference. (Dkt. 7.)

At the February 18th conference, the Court dismissed Plaintiff's Complaint for lack of personal

jurisdiction with leave to amend. On March 17, 2016, Plaintiff filed an Amended Complaint,

which is the subject of the present motion. (Dkt. 11.)

## DISCUSSION

## I. PLAINTIFF'S USE OF A PSEUDONYM

As an initial matter, the Court addresses Plaintiff's request to proceed under the guise of a

pseudonym. Federal Rule of Civil Procedure 10(a), which governs pleadings in civil actions,

provides that "[t]he title of [a plaintiff's] complaint must *name all the parties*." F.R.C.P. 10(a)

(emphasis added). Courts have "carved out a limited number of exceptions to the general

requirement of disclosure [of the names of parties], which permit plaintiffs to proceed

anonymously. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (internal

quotation marks and citation omitted) (alteration in original). In this Circuit, "when determining

whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest

in anonymity must be balanced against both the public interest in disclosure and any prejudice to

the defendant." *Id.* The Second Circuit has identified a "non-exhaustive" list of factors to consider

when determining whether a plaintiff may proceed under a pseudonym including:

> (1) whether the litigation involves matters that are highly sensitive and [of a]
> personal nature; (2) whether identification poses a risk of retaliatory physical or
> mental harm to the . . . party [seeking to proceed anonymously] or even more
> critically, to innocent non-parties; (3) whether identification presents other harms
> and the likely severity of those harms, including whether the injury litigated against
> would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether
> the plaintiff is particularly vulnerable to the possible harms of disclosure,
> particularly in light of his age; (5) whether the suit is challenging the actions of the

government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (internal quotation marks and citations omitted) (alterations in original).

Here, the Court denies Plaintiff's request to proceed anonymously because she fails to demonstrate *any* valid interest in preserving her anonymity, let alone that the balancing of the parties' and public's interests tilts in her favor. Rather, her argument boils down to an unsupported accusation that if her name is made public, then it is "more likely than not that . . . the lawsuit could cause the plaintiff to be blackballed nationally and internationally" because the "NCBE is currently the only independent organization responsible for the Character and Fitness portion of many jurisdictions' bar applications[.]" (Dkt. 25 at ECF 4 n.2.) Even accepting the rationality of this fear, Plaintiff's interest in not being "blackballed nationally and internationally" in the legal profession does not compare with the serious interests that courts have found to justify permitting a plaintiff to proceed anonymously, such as risks of physical harm or unjustified invasions of privacy or public embarrassment. *See, e.g.*, *Grottano v. The City of N.Y.*, 15-CIV-9242, 2016 WL 2604803, at *2 (S.D.N.Y. Mar. 30, 2016) (permitting plaintiffs to proceed under pseudonyms where they brought suit against City of New York alleging prison guards conducted inappropriate body cavity searches when they visited inmates at State prison); *Malibu Media, LLC v. Doe*, 15-CIV-2624, 2015 WL 6116620, at *5 (S.D.N.Y. Oct. 16, 2015) (permitting defendant to proceed under pseudonym where defendant was accused of illegally downloading adult videos); *Michael v. Bloomberg L.P.*, 14-CV-2657, 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015) ("There is no

issue here of physical retaliation or mental harm against plaintiff.  Nor is this the type of unusual case involving matters of a highly sensitive or personal nature—*i.e.,* claims involving sexual orientation, pregnancy, or minor children—in which courts have justified anonymous plaintiffs proceeding pseudonymously.").

Moreover, Plaintiff's argument that she must maintain anonymity because *Defendants* could retaliate against her is belied by the fact that she has already publicly disclosed her identity during the course of this litigation.  "[F]iguratively speaking, the cat is already out of the bag." *Corley v. Vance*, 15 CIV. 1800, 2015 WL 4164377, at *9 (S.D.N.Y. June 22, 2015).  Based on the parties' submissions before the Court, it is clear that Defendants are fully aware of Plaintiff's identity and her status as the plaintiff in this action.  Specifically, Plaintiff publicly identified herself in a myriad of State and federal court documents relating to this matter, which have not been filed under seal and are currently accessible to the public.  (*See* NYSCEF Doc. No. 1 at 1, 2, 7; NYSCEF Doc. No. 2 at 2; NYSCEF Doc. No. 3 at 1, 2; NYSCEF Doc. No. 4 at 1; NYSCEF Doc. No. 5 at 1; Dkt. 8 at ECF 5; Dkt. 11 at ECF 8.)  Indeed, under Plaintiff's signature as "Jane Doe" on her Amended Complaint, she reveals her true identity.  (Am. Compl. at ECF 8 (identifying Plaintiff as "Natasha Vernon").)[5]

Lastly, even if Plaintiff had a strong interest in maintaining her anonymity, it is outweighed by the countervailing public interest in the disclosure of her identity because of her status as a licensed attorney and officer of the Court.  In New York, for example, applicants to the bar are

---

[5] The Court cannot reconcile Plaintiff's assertion of a strong interest in preserving her anonymity with her utter carelessness in maintaining that anonymity in her public filings.  To the extent Plaintiff did not know the proper procedure for filing documents under seal, she clearly could have contacted the Clerk's Office for such information or, at the very least, filed her documents with redactions, as Defendants did out of an abundance of caution.  (*See, e.g.*, Dkt. 25-1 at ECF 1.)  That Plaintiff is an attorney makes her failure to do either even more damaging to her claim that she values her anonymity in this matter.

required to disclose their involvement in litigation. *See Admission Multip Packet*, http://www.nybarexam.org/Admission/AdmissionMultiDeptPacket.htm (last visited Jan. 6, 2017). This interest "far outweigh[s] [[P]laintiff's] interest in not suffering professional embarrassment and any concomitant financial harm." *Doe v. Delta Airlines Inc.*, No. 15-3561-CV, 2016 WL 6989793, at *3 (2d Cir. Nov. 29, 2016); *see also Doe v. Colgate Univ.*, 5:15-CV-1069, 2015 WL 5177736, at *2 (N.D.N.Y. Sept. 4, 2015) (finding that plaintiff's privacy interests did not "outweigh the public's interest in full disclosure of [the] judicial proceedings. Plaintiff has voluntarily opted to commence this litigation and air his grievances in a quintessentially public forum."); *Michael v. Bloomberg L.P.*, 2015 WL 585592, at *3. Indeed, a State board of law examiners might also find Plaintiff's actions in this litigation and correspondence with the NCBE relevant to assessing her character and fitness to practice law. Furthermore, permitting Plaintiff to conceal her identity, in particular, from Defendants would, for obvious reasons, undermine their ability to defend themselves in this action.

Accordingly, the Clerk of Court is respectfully directed to amend the caption of this case to replace Jane Doe with Natasha Vernon as the Plaintiff.

## II. PERSONAL JURISDICTION

Turning to Defendants' motion to dismiss, Defendants argue that this Court lacks personal jurisdiction over Defendants. The Court agrees.

"Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum in which the court sits." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986). "On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)); *Megna v. Biocomp Labs. Inc.*, 166 F. Supp. 3d 493,

496 (S.D.N.Y. 2016). At this stage, Plaintiff's allegations are generally accepted as true, except where the "defendant rebuts [a plaintiff's] unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and [a plaintiff does] not counter that evidence." *Merck*, 425 F. Supp. 2d at 420. In such a case, "the allegation may be deemed refuted." *Id.*

Plaintiff asks the Court to exercise either general or specific jurisdiction over the NCBE and Individual Defendants.[6] "General jurisdiction allows a court to adjudicate any and all claims against a defendant, regardless of whether the claims are connected to the forum state. *Bonkowski v. HP Hood LLC*, 15-CV-4956, 2016 WL 4536868, at *2 (E.D.N.Y. Aug. 30, 2016) (internal quotation marks and citations omitted). On the other hand, specific jurisdiction only exists where there is some connection between Plaintiff's underlying claim and the forum. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). New York courts exercise general jurisdiction under New York's Civil Practice Law and Rules ("CPLR") § 301 and specific jurisdiction under CPLR § 302. *Muraco v. Sandals Resorts Int'l*, 14-CV-4896, 2015 WL 9462103, at *3 (E.D.N.Y. Dec. 28, 2015).

No matter the statutory provision implicated, however, "the exercise of personal jurisdiction is informed and limited by the U.S. Constitution's guarantee of due process, which requires that any jurisdictional exercise be consistent with traditional notions of fair play and substantial justice." *Bonkowski*, 2016 WL 4536868, at *2 (internal quotation marks and citations omitted). In other words, even if the Court can exercise jurisdiction under New York's long-arm statute, it still must determine whether jurisdiction comports with the Constitution's Due Process

---

[6] Plaintiff does little to distinguish between exercising jurisdiction over the NCBE versus the Individual Defendants.

Clause.  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (citing *Intl' Shoe Co. v. Washington*, 326 U.S. 310 (1945)); *Mercator Corp. v. Sapinda Holding B.V.*, 15-CV-2970, 2016 WL 6683505, at *6 (S.D.N.Y. Nov. 14, 2016) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodrigquez*, 171 F.3d 779, 784 (2d Cir. 1999)).

### A.      General Jurisdiction

Under CPLR § 301, "a court may exercise jurisdiction over a foreign defendant who is doing business in New York with a *fair measure of permanence and continuity*."  *Muraco*, 2015 WL 9462103, at *5 (internal quotation marks and citation omitted) (emphasis added).  This test applies equally to foreign corporate defendants and nonresident individuals, *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014), and requires "'continuous, permanent, and substantial activity in New York.'"  *Persh v. Petersen*, 15 CIV. 1414, 2016 WL 4766338, at *5 (S.D.N.Y. Sept. 13, 2016) (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000)); *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990); *In re Kingate Mgmt. Ltd. Litig.*, 09-CV-5386, 2016 WL 5339538, at *30–31 (S.D.N.Y. Sept. 21, 2016).

Separate and apart from New York statutory requirements, the Supreme Court has emphasized that for general jurisdiction purposes, due process is satisfied "only if [a company] is headquartered or incorporated in the forum state or is otherwise 'at home' in that state."  *Thackurdeen v. Duke Univ.*, 15-3082-CV, 2016 WL 4578662, at *1 (2d Cir. Sept. 1, 2016) (citing *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 & n.19 (2014)).  This standard makes it "incredibly difficult to establish general jurisdiction in a forum other than the place of [the corporate defendant's] incorporation or principal place of business."  *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 387 (E.D.N.Y. 2015) (internal quotation marks and citation omitted); *Daimler*, 134 S.Ct. at 760 (recognizing that "only a limited set of affiliations with a forum will render a defendant

amenable to all-purpose jurisdiction").[7]  Similarly, for an individual defendant, "the paradigm

forum for the exercise of general jurisdiction is [his or her] domicile." *Daimler*, 134 S. Ct. at 760

(citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *Reich*, 38

F. Supp. 3d at 454–55 ("For general jurisdiction over an individual to comport with due process,

Defendants must be domiciled in New York, served in New York, or have otherwise consented to

the court's jurisdiction.").[8]

### 1. The NCBE

As to the NCBE, a national organization incorporated in Illinois with its principal place of

business in Wisconsin, the Court finds that exercising general jurisdiction in New York or this

district would not comport with due process.[9]  As Plaintiff concedes, "Defendants' decisions

---

[7] In *Daimler*, the Supreme Court recognized that this standard did "not foreclose the possibility that in an *exceptional* case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." 134 S.Ct. at 761 n.19 (internal citations omitted) (emphasis added); *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). But for the reasons discussed further below, Plaintiff fails to meet this burden.

[8] Although not addressed by the parties, the Second Circuit has acknowledged "some tension" between the Supreme Court's due process test under *Daimler* and New York CPLR's "doing business" test for purposes of general jurisdiction.  *Sonera*, 750 F.3d at 225; *Reich*, 38 F. Supp. 3d at 454–55 ("The Supreme Court's recent decision in *Daimler AG v. Bauman* has brought uncertainty to application of New York's 'doing business' rule.  As a result, it is unclear whether existing New York general jurisdiction jurisprudence remains viable.").  Because the Court finds that exercising general jurisdiction here would not comport with Due Process, it need not resolve this tension.

[9] Because the Court concludes that exercising jurisdiction over NCBE would not satisfy due process, it need not address whether Plaintiff can demonstrate that New York's statutory requirements for general jurisdiction are satisfied.  *See Thackurdeen*, 2016 WL 4578662, at *1 ("Whatever application § 301 might have, however, it is apparent that the exercise of general jurisdiction over defendants would be inconsistent with constitutional due process."); *Sonera*, 750 F.3d at 224 n.2 ("There is no need to address the scope of general jurisdiction under New York law because the exercise of general jurisdiction over [defendant] is clearly inconsistent with *Daimler*."); *Muraco*, 2015 WL 9462103, at *5 ("The Court declines to determine whether section

concerning Plaintiff's application were made in Wisconsin," and more generally, the NCBE's "products are developed mainly in Wisconsin[.]" (Dkt. 25 at ECF 12.) In addition, according to a declaration submitted by Defendant Erica Moeser, the President and Chief Executive Officer of the NCBE since 1994, the "NCBE does not own or lease any offices or property in the State of New York, occupy any offices in the State of New York, or own any bank or other financial accounts in the State of New York." (Dkt. 23 ("Moeser Dec.") ¶ 6.)

Nonetheless, Plaintiff argues that the Court should find general jurisdiction as to the NCBE because it develops and administers bar-related exams that are used in New York, including the Multistate Bar Examination ("MBE"), Multistate Performance Test ("MPT"), Multistate Essay Exam ("MEE"), and Multistate Professional Responsibility Exam ("MPRE").[10] Accepting this argument, however, would subject the NCBE to limitless general jurisdiction across the country, a result the Supreme Court directly cautioned against in *Daimler*. 134 S.Ct. at 762 ("a corporation that operates in many places can scarcely be deemed at home in all of them"). The mere sale of exams to the New York bar authority, without any other physical presence in the State and without the sale constituting a large percentage of revenue for the NCBE, is insufficient to establish general jurisdiction under *Daimler*, *see Minholz v. Lockheed Martin Corp.*, 1:16-CV-154, 2016 WL 7496129, at *13 (N.D.N.Y. Dec. 30, 2016) (finding no general jurisdiction over Colorado-based

301 is applicable to these facts because there are no facts to support a finding that the exercise of general jurisdiction would comport with due process.").

[10] Defendants dispute the suggestion that the NCBE administers any of these exams in New York, maintaining that these "exams are [only] purchased from NCBE" and "NCBE staff do not administer" any of the exams themselves. (Moeser Dec. ¶ 7.) Defendants explain that the MBE, MPT, and MEE are administered by the State bar authority in the jurisdiction where the applicant is seeking admission and that the MPRE is administered by a third-party vendor located outside of New York. (*Id.* ¶¶ 7-9.) Accordingly, the Court finds that the NCBE does not administer any of these exams in New York.

company because, among other reasons, "less than one percent of [the compnay's] sales had a billing or shipping address in New York"), and is significantly less contact than in other cases where general jurisdiction has not been found. *See, e.g.*, *Stroud*, 91 F. Supp. 3d at 388 (existence of Tyson Foods manufacturing facility in Buffalo, New York was insufficient for general jurisdiction over the company where it operated hundreds of such plants nationwide, observing that "[t]he notion that [a restaurant chain] can be considered 'at home' in every forum in which it operates restaurants was specifically rejected in *Daimler*."); *Gucci Am, Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (no general jurisdiction where bank had branch offices in New York); *Bonkowski*, 2016 WL 4536868, at *2 (no general jurisdiction over company with manufacturing plants and administrative office in New York). Accordingly, Plaintiff has failed to make a *prima facie* showing that general jurisdiction exists over the NCBE.[11]

### 2. The Individual Defendants

Plaintiff's argument for exercising general jurisdiction over the Individual Defendants is even more tenuous. Relying on the Individual Defendants' statements that they have visited New York sporadically for personal and professional reasons over the past ten years,[12] Plaintiff argues

---

[11] Plaintiff also argues, without citation to any legal authority except Black's Law Dictionary, that the Court has general jurisdiction over the NCBE because Bryan Williams, the former Chair-Elect of the NCBE's Board of Directors, lives and works in New York. But, "the mere fact that a board member resides in New York is not enough to confer jurisdiction." *La Piel, Inc. v. Richina Leather Indus. Co.*, 10-CV-1050, 2013 WL 1315125, at *9 n.12 (E.D.N.Y. Mar. 29, 2013).

[12] In her declaration, submitted in support of Defendant's motion, Defendant Gessler states that (1) she is a "lifelong resident of Wisconsin" who currently lives in Madison, Wisconsin, and (2) over the last ten years, she has only "attended one business meeting in New York as an employee of NCBE" and has not visited the State for personal reasons at all. (Dkt. 24 ("Gessler Dec.") ¶¶ 17, 19). Defendant Moeser states in her declaration that (1) she has resided in Madison "for more than 30 years," (2) in the past ten years, she has attended less than eight NCBE business meetings or conferences in New York, and (3) she occasionally visits the State for personal

without citing any legal authority that she has established general jurisdiction over the Individual Defendants as they have allegedly "cement[ed] a continuous relationship with New York." (Dkt. 25 at ECF 10.) Under New York law, however, "[m]ultiple business trips and meetings in the forum state are insufficient to establish the continuous and permanent presence required for general jurisdiction under New York law." *Persh*, 2016 WL 4766338, at *7. Plaintiff alleges no facts to demonstrate that the Individual Defendants' contacts are continuous or permanent, as required under New York law,[13] let alone that they constitute the "exceptional case" necessary to satisfy the due process test articulated in *Daimler*.[14]

In sum, general jurisdiction cannot be found under New York law as to Defendants in this matter.

### B.    Specific Jurisdiction

Plaintiff next asserts that the Court has specific jurisdiction over Defendants because (1) her claim arises from Defendants' business transactions in New York State (CPLR 302(a)(1)); and

---

reasons. (Moeser Dec. ¶¶ 11, 12-14). The Amended Complaint contains no factual allegations regarding the nature or extent of the Individual Defendants' contacts with New York.

[13] Plaintiff also does not allege that the Individual Defendants are subject to the Court's jurisdiction as officers or representatives of the NCBE. Such an argument would fail in any event. *See Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 635 (S.D.N.Y. 2008) (an individual acting on a corporation's behalf is not subject to general personal jurisdiction under CPLR § 301); *Big Apple Pyrotechnics and Multimedia Inc. v. Sparktacular Inc.*, 2007 WL 747807, at *6 (S.D.N.Y. Mar. 9, 2007) ("Although a corporation can act only through an employee or agent, the employee or agent being a live rather than a fictional being can act on behalf of himself or his employer or principal. He does not subject himself, individually, to the CPLR 301 jurisdiction of our courts, however, unless he is doing business in our State individually.") (quoting *Laufer v. Ostrow*, 55 N.Y.2d 305, 313 (1982)).

[14] Not surprisingly, courts in other jurisdictions have declined to exercise jurisdiction over Defendant Moeser for similar reasons. *See, e.g.*, *Shestul v. Moeser*, 344 F. Supp. 2d 946, 949 (E.D. Va. 2004); *Walsh v. Massachusetts Bd. of Bar Examiners*, 01-30166, 2002 WL 561024, at *2 (D. Mass. Apr. 9, 2002) ("Ms. Moeser lacks any contacts, 'minimum' or otherwise, with the Commonwealth of Massachusetts; the court therefore lacks personal jurisdiction over her.").

(2) Defendants committed a tortious act out-of-state, which "caused Plaintiff to suffer loss of money, loss of reputation and loss of experience in New York . . . ."  (CPLR 302(a)(3)).  (Dkt. 25 at ECF 12-13.)  The Court addresses each in turn.

1.    New York CPLR § 302(a)(1)

New York's long-arm statute permits a court to exercise specific jurisdiction over a non-domiciliary if the defendant "transacts business within the state" and the "cause of action arise[s] from" that transaction.  CPLR § 302(a)(1); *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (internal quotation marks and citations omitted).

a)    "Transacting Business" Prong

Under New York law, a "defendant transacts business in New York if it has 'purposely availed [it]self of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its law.'"  *Stroud*, 91 F. Supp. 3d at 389 (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)).  "More than limited contacts are required for purposeful activities sufficient to establish that the non-domiciliary transacted business in New York."  *First Horizon Bank v. Moriarty-Gentile*, 10-CV-00289, 2015 WL 8490982, at *5 (E.D.N.Y. Dec. 10, 2015) (internal quotation marks and citations omitted).  "[I]t is not the quantity but the quality of the contacts that matters under [New York's] long-arm jurisdiction analysis."  *Yurasov-Lichtenberg v. Betz*, 15-CV-1430, 2016 WL 4544031, at *4 (E.D.N.Y. Aug. 30, 2016) (internal quotation marks and citation omitted) (alteration in original).  Here, Plaintiff contends that Defendants "transacted business" in New York by "repeatedly mail[ing] correspondence to the Plaintiff at a New York address" and conducting investigatory activities related to her character and fitness application in New York.  (Dkt. 25 at ECF 11.) [15]  For purposes of specific jurisdiction

---

[15] Notably, Plaintiff fails to allege a single fact in her Amended Complaint linking the Individual Defendants to these contacts, *i.e.,* that Defendant Moeser or Gessler sent the letters to

under CPLR § 302(a)(1), the Court finds that these activities do not qualify as "transacting business" because they do not amount to Defendants "purposefully availing [themselves] of the "privilege of conducting activities within New York." *Stroud*, 91 F. Supp. 3d at 389 (internal quotation marks and citation omitted).

First, Defendants' alleged mailing of materials relating to Plaintiff's character and fitness application to Plaintiff while she was in New York, in itself, does not constitute transacting business sufficient to confer specific jurisdiction.[16] *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 51 (2d Cir. 2012) (citing *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) ("[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York."); *Kahn Lancaster, Inc. v. Lark Int'l Ltd.*, 956 F. Supp. 1131, 1125 (S.D.N.Y. 1997) (The "nature and quality of the New York contacts must be examined to determine their significance.") (citing *George Reiner & Co. v. Schwartz*, 363 N.E.2d 551, 553–54 (N.Y. 1997)). Indeed, "New

---

Plaintiff or performed the investigatory activities in the State of New York. Her inclusion of such facts in her opposition brief does not alter the Court's analysis because, as discussed further below, the mailing of materials to Plaintiff while she was in New York, in itself, is insufficient to confer specific jurisdiction.

[16] Plaintiff makes seemingly contradictory factual allegations with respect to her State of residence at the time she submitted her District of Columbia bar admission petition, which included her character and fitness application. On the one hand, she alleges that she "assembled her application for admission to the District of Columbia while physically present in New York State," which is consistent with Plaintiff's notarized attestation that she signed the application in Kings County, New York. (Dkt. 24-1 at ECF 26.) At the same time, however, she alleges that by February 8, 2011, she "had permanently moved to New York," which was *after* she already corresponded with the NCBE *about* her character and fitness application. And, on the character and fitness application itself, notwithstanding it being notarized in New York, Plaintiff identified current addresses in Cleveland, Ohio and London, England—not New York. (Dkt. 24-1 at ECF 4.) In that same application, Plaintiff attested that she last lived in New York in June 2003. (*Id.*) The only way to reconcile these allegations is to infer that Plaintiff assembled and submitted her District of Columbia bar admission petition, including her and character and fitness application, while physically present, but not yet permanently residing, in New York.

York courts have consistently refused to sustain ["doing business"] jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." *Giusto v. Rose & Womble Realty Co., LLC*, 15-CV-5249, 2016 WL 4544038, at *7 (E.D.N.Y. Aug. 31, 2016) (internal quotation marks and citation omitted); *see Parke-Bernet Galleries v. Franklyn*, 256 N.E.2d 506, 508–09 (N.Y. 1970) (contacts by telephone or mail only provide a basis for asserting personal jurisdiction over non-resident defendants where the defendant, through those contacts, "projected himself" into New York in such a manner that he "purposefully availed himself of the privilege of conducting business in New York and thereby invoked the benefits and protections of its laws") (citations and quotations omitted); *Carlson v. Cuevas*, 932 F. Supp. 76, 78, 79 (S.D.N.Y. 1996) (telephone calls and other communications to New York, standing on their own, do not necessarily confer jurisdiction).

That Plaintiff may have compiled or submitted her character and fitness application to the NCBE while temporarily located—or even residing—in New York is plainly insufficient to confer specific jurisdiction over the NCBE as it improperly shifts the inquiry to Plaintiff's contacts with New York, rather than whether Defendants purposefully availed themselves of the privilege of conducting activities in New York. *Plaintiff's* fortuitous decision to mail her character and fitness application and/or correspond with the NCBE while in New York does not convert the *NCBE's* activities into purposefully seeking to do business in the State. Rather, the NCBE's acts were merely done in response to Plaintiff's presence and conduct in New York. *Mason v. Antioch Univ.*, 15-CV-5841, 2016 WL 2636257, at *8 (E.D.N.Y. May 5, 2016) (finding no specific jurisdiction under CPLR § 302(a)(1) even though plaintiff compiled application to school at home in New York because such communications were "responsive").

Second, Defendants' alleged investigatory activities are also insufficient to establish that Defendants "transacted business" in New York. As an initial matter, aside from Plaintiff's conclusory assertions in her brief, the record before the Court is devoid of any evidence that Defendants actually contacted personal references or took any purposeful steps in New York to "re-confirm and/or investigate" facts in Plaintiff's application. (Dkt. 25 at ECF 11.) Without more, such conclusory assertions are insufficient to demonstrate personal jurisdiction. *See Deitrick v. Gypsy Guitar Corp. et. al.*, 16 CIV. 616, 2016 WL 7494881, at *5 (S.D.N.Y. Dec. 28, 2016) ("Plaintiff's conclusory claim that [defendant] sells guitars through retailers in New York is insufficient for a *prima facie* showing of jurisdiction.").

At any rate, even if pled sufficiently, such "investigatory" contacts would be insufficient to establish personal jurisdiction because they amount to nothing more than responsive data collection that is insufficient to confer specific jurisdiction. *See Mason*, 2016 WL 2636257, at *8 (no specific jurisdiction where University's communications with plaintiffs were "responsive" and therefore did not qualify as "purposeful availment"); *Dabiri v. Federation of States Medical Boards of United* States, 08-CV-4718, 2009 WL 803126, at *1 (E.D.N.Y. Mar. 25, 2009). *Dabiri* is instructive on this issue. There, the plaintiff brought an action against the Federation of States Medical Boards ("FSMB"), alleging that he was unable to secure employment as a result of a previous suspension of his medical license, which had been transmitted to FSMB. *Id.* at *1-2. The Court declined to exercise specific jurisdiction over FSMB under CPLR § 302(a)(1), finding that the organization's collection and exchange of information regarding the plaintiff and other New York residents was insufficient to confer specific jurisdiction absent, for example, allegations "that FSMB sent a report about plaintiff to any entities or persons in New York State." *Id.* at *5. The same rationale applies here. Defendants' actions, as alleged, amount to mere data collection from

Plaintiff and other individuals for the purpose of supplying a report to the District of Columbia bar authority.

In sum, Plaintiff's allegations of the NCBE's episodic and responsive contacts with New York are insufficient to establish that Defendants "transact business" in New York so as to satisfy the first prong of the test for specific jurisdiction under CPLR 302(a)(1).[17]

---

[17] To the extent that Plaintiff is relying on Defendants' distribution of the MPRE, MBE, MEE, or MPT in New York or its alleged administration of the New York bar's character and fitness program to demonstrate that Defendants "transact business" in New York, this argument also fails, because, as further explained below, these Plaintiff's claims do not "arise from" these contacts for purposes of CPLR § 302(a)(1). As to the former, Plaintiff does not allege any claim based on, or related to, Defendants' distribution of these exams, and thus Plaintiff's claims cannot be said to "arise from" these business contacts. With respect to the latter, even assuming *arguendo* that the New York bar utilizes the NCBE's character and fitness application processing services for its admissions process, this business transaction similarly does not form the basis of, or relate to, Plaintiff's claim, which instead involves her application for admission to the District of Columbia bar.

Furthermore, there is no basis for finding that the New York bar, in fact, utilizes the NCBE's services for its character and fitness evaluation process. In a sworn declaration provided by Defendant Moeser, she states that the "NCBE does not perform any character and fitness investigations of candidates seeking admission to practice law in New York[.]" (Moeser Dec. ¶ 5.) In addition, the NCBE's own website, which Plaintiff referenced in her Amended Complaint, and the New York State Unified Court System's website confirm that the NCBE is not involved in the character and fitness evaluations done for New York State bar applicants. *See New York – NCBE*, http://www.ncbex.org/character-and-fitness/jurisdiction/ny (last visited December 29, 2016) (New York [does not use NCBE's character and fitness services; please contact New York for filing instructions."); *see also Appellate Division, First Department*, http://www.courts.state.ny.us/courts/AD1/Committees&Programs/CFC/index.shtml (last visited December 29, 2016) ("All individuals who pass the New York State bar examination . . . must pass through an application process administered by the First Department's Committee on Character and Fitness . . . ."). The Court may take judicial notice of both sources of information. *See Volpe v. Am. Language Commc'n Ctr., Inc.*, 15 CIV. 06854, 2016 WL 4131294, at *2 (S.D.N.Y. July 29, 2016) (court can take judicial notice of information publicly available on party's website where authenticity is not in dispute); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (courts "routinely" take judicial notice of documents from official government websites); *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 298 (E.D.N.Y. 2014) (judicial notice of company website because it was incorporated by reference in plaintiff's complaint). Thus, because Defendants have rebutted Plaintiff's unsupported allegation regarding the NCBE's involvement in evaluating the character and fitness of New York State bar applicants "with direct, highly specific, testimonial evidence," which Plaintiff "does not

b) "Arising From" Prong

Even accepting, for the sake of argument, Plaintiff's contention that Defendants "transacted business" in New York by corresponding with Plaintiff and conducting a background investigation about her in the State, Plaintiff still cannot demonstrate that the Court has specific jurisdiction under CPLR § 302(a)(1) because Plaintiff's claims do not "arise from" those purported business transactions. As explained in *Torres v. Monteli Travel, Inc.*:

> New York courts have held that a claim "aris[es] from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon," or when "there is a substantial relationship between the transaction and the claim asserted." A connection that is "merely coincidental" is insufficient to support jurisdiction.

09-CV-2714, 2011 WL 2670259, at *8 (E.D.N.Y. July 7, 2011) (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)); *see also Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996) ("arising from" prong requires "a substantial nexus" between the transaction of business and plaintiff's claim); *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 739 (S.D.N.Y. 2001) ("It is well-settled that the relationship between the claim and the in-state transaction *must be direct*." (emphasis added)) (internal quotation marks and citations omitted). "Ultimately, the analysis must focus on the nature and quality of the individual defendant's contact with the forum and *whether such contact has a strong relationship to the claims* based on the totality of the circumstances." *Merritt v. Airbus Americas, Inc.*, 2:15-CV-05937, 2016 WL 4483623, at *2 (E.D.N.Y. Aug. 22, 2016) (internal quotation marks and citation omitted) (emphasis added).

---

counter," the Court deems Plaintiff's allegation that the New York bar uses the NCBE's character and fitness evaluation services as having been fully refuted. *Merck*, 425 F. Supp. 2d at 420.

Plaintiff's primary argument is that her case "directly relates to Defendants' mailings to New York and Defendants' preliminary activities to confirm Plaintiff's background." (Dkt. 25 at ECF 11.) Even if these contacts were sufficient to establish that Defendants "transacted business" in New York, Plaintiff's argument still fails because her claims arise from the NCBE's rejection of Plaintiff's character and fitness application at the NCBE's offices in *Wisconsin* in connection with Plaintiff's *District of Columbia* bar admission petition, and *not* from mailings to Plaintiff or reference checks in New York.[18] Defendants' alleged mailings to Plaintiff and background investigation activities in New York are, at best, "coincidental" to Plaintiff's claims. *See Torres*, 2011 WL 2670259, at *8 ("merely coincidental" connection between Defendant's alleged business "transaction and the claim asserted" is insufficient to support specific jurisdiction under CPLR § 302(a)(1)). Here, because the Amended Complaint fails to demonstrate an "articulable nexus" between Defendants' alleged business activities in New York and Plaintiff's claims, the Court cannot find specific jurisdiction under CPLR 302(a)(1). *See Mason*, 2016 WL 2636257, at *8 (no

---

[18] Courts have recognized that courts can exercise specific jurisdiction over a defendant where the defendant allegedly breached a contract that was entered into in New York, or supplied goods to the plaintiff in New York. *See Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983) ("Section 302(a)(1) is typically invoked for a cause of action against a defendant who breaches a contract with plaintiff, or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York." (internal citations omitted)). Here, however, Plaintiff fails to allege that she entered into a contract with the NCBE while present in New York or that any contract required Defendants to supply goods or services to her in New York. *See AVRA*, 41 F. Supp. 3d at 359 (S.D.N.Y. 2014) (finding no "substantial relationship" between business transactions and claims where plaintiff alleged that contracts were formed and executed in Germany).

To the extent Plaintiff argues that she suffered injuries in New York arising out of Defendants' out-of-state conduct, "New York courts have consistently held that out-of-state injuries do not suffice for jurisdiction under § 302(a)(1) when their only connection to New York is that they were sustained in the course of an activity that was advertised and contracted for within the state." *Thackurdeen*, 2016 WL 4578662, at *2 (collecting cases). There is no allegation or evidence that the NCBE advertised its character and fitness evaluation services, or entered into a contract with Plaintiff to provide those services, in New York.

specific jurisdiction over University on Title VII claims because even if University transacted business in New York, "[a]ll of the alleged discriminatory harassment occurred at the University's campus in Seattle, Washington; all of [Plaintiff's] reports of harassment were made to employees at that campus; and any act, or failure to act, on those reports by the University occurred at that campus.").[19]

### 2. New York CPLR § 302(a)(3)

To the extent Plaintiff argues for specific jurisdiction under CPLR § 302(a)(3) as to her tort claims, *e.g.*, abuse of power, fraud, and negligence, this argument also fails. "Section 302(a)(3) permits courts to exercise specific jurisdiction over a non-domiciliary corporation that commits a tortious act outside New York State but causes harm to someone in the state if either of two conditions are present." *Muraco*, 2015 WL 9462103, at *3 (citations omitted). One condition is that the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." CPLR § 302(a)(3)(i). The other condition is that the defendant "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3)(ii). Because Plaintiff fails to

---

[19] *See also Thackurdeen*, 130 F. Supp. 3d at 801–02 (no specific jurisdiction where plaintiff signed contract at home in New York that allowed child to participate in activity in Costa Rica, which gave rise to cause of action); *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 740 (S.D.N.Y. 2001) ("Although the Plaintiffs point to numerous transactions which relate generally to the Defendant's European production of 'GREASE,' these transactions are not directly tied to the Plaintiffs' claim. The Plaintiffs have introduced no evidence that any of the decisions relating to the alleged infringement were made in New York or even by personnel hired in New York."); *Stern v. Four Points*, 133 A.D.3d 514, 514 (N.Y. App. Div. 2015) ("Although ZLC's participation in the interactive website for Sheraton hotels may demonstrate that it transacted business in New York, the relationship between ZLC's website activities and plaintiff's negligence action arising from an allegedly defective condition of premises in Michigan is too remote to support the exercise of long-arm or specific jurisdiction under CPLR 302(a)(1).").

demonstrate that Defendants' conduct caused harm or injury in New York, specific jurisdiction cannot be found under CPLR § 302(a)(3).

For the purpose of CPLR § 302(a)(3)(ii), "[t]he situs of the injury . . . is the place where the underlying, original event occurred which caused the injury . . . not the location where the resultant damages are felt by the plaintiff." *M & M Packaging, Inc. v. Kole*, 298 F. App'x 39, 42 (2d Cir. 2008) (internal quotation marks and citation omitted). "New York courts uniformly hold that the situs of a nonphysical, commercial injury is where the critical events associated with the dispute took place." *United Bank of Kuwait, PLC v. James M Bridges, Ltd.*, 766 F. Supp. 113, 116 (S.D.N.Y. 1991) (citation omitted). "The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *Madison Capital Markets, LLC v. Starneth Europe B.V.*, 15 CIV. 7213, 2016 WL 4484251, at *5 (S.D.N.Y. Aug. 23, 2016) (internal quotation marks and citation omitted). "It is well-settled that residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction under section 302(a)(3)." *Muraco*, 2015 WL 9462103, at *4.

Here, the location of the events causing the alleged injury is plainly Wisconsin, not New York. If Defendants abused their power or engaged in fraud or negligence by rejecting Plaintiff's application, that conduct occurred at the NCBE's offices in Wisconsin; and if Defendants negligently carried out their responsibilities in processing her application, those actions also happened at the NCBE's offices in Wisconsin.[20] Indeed, Plaintiff concedes that "Defendants' decisions concerning Plaintiff's application were made in Wisconsin" and "[the NCBE's] products

---

[20] Plaintiff cannot establish jurisdiction for her breach of contract claims under CPLR § 302(a)(3) because that provision only applies to tortious conduct and "is not available for breach of contract actions." *Madison Capital*, 2016 WL 4484251, at *5.

are developed mainly in Wisconsin[.]" (Dkt. 25 at ECF 12.)  Plaintiff's only argument in support

of specific jurisdiction under CPLR § 302(a)(3) is that she allegedly incurred injury in New York,

*i.e.*, she "suffer[ed] loss of money, loss of reputation, and loss of experience in New York."  (*Id.*)

But this allegation relates only to the "situs" of the resulting damages and not the initial injury.

*See Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 805–06 (S.D.N.Y. 2015) (despite plaintiffs

"undoubtedly continu[ing] to experience pain and suffering from [the death of their family

member] upon their return to New York, a litigant may not carry an injury home for purposes of

section 302(a)(3)."); *Muraco*, 2015 WL 9462103, at *4 (where Plaintiff's foot was injured at a

resort in St. Lucia, the situs of the injury was St. Lucia, and "[u]nder section 302(a)(3), the fact

that Plaintiff is a New York resident and continued to suffer pain in New York as a result of the

injury is not relevant." (citing cases)); *AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d

350, 362 (S.D.N.Y. 2014) (situs of injury is "location of the events causing the injury, rather than

the location where resultant damages were felt").[21]

The same is true with respect to Plaintiff's "constructive fraud and misrepresentation

claim," the factual basis of which is unclear from the Amended Complaint.  Under New York law,

"constructive fraud requires: (1) a fiduciary or confidential relationship between the parties; (2) a

misrepresentation or omission of material fact; (3) which was made with the intention of inducing

reliance; and (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the

plaintiff."  *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 82 (S.D.N.Y. 2010), *aff'd sub nom. Saltz

v. First Frontier, L.P.,* 485 F. App'x 461 (2d Cir. 2012).  The only plausible reading of the

---

[21] Even if New York law recognized the location of the resultant damages as the relevant situs for purposes of specific jurisdiction, the Court would find that the location of the resultant damages is not New York.  Here, any loss of reputation or damages arising from the inability to practice law would occur in the District of Columbia, since that is the jurisdiction where Plaintiff was denied admission to the bar allegedly because of Defendants' conduct.

Amended Complaint with regard to this claim is that Defendants' December 16, 2010 letter advising Plaintiff that her "signature page was not executed properly" was "false and unfounded," and thus amounted to constructive fraud. (Am. Compl. ¶ 7.)[22]

With respect to an assertion of jurisdiction under CPLR § 302(a)(3) over a fraud claim, "the critical question is . . . where the first effect of the tort was located that ultimately produced the final economic injury." *Bank Brussels*, 171 F.3d at 792. Here, Plaintiff's allegation that she read the December 16 letter while in New York does not satisfy this test. Plaintiff's mere reading of the letter is neither a "first effect" or, for that matter, any effect, of the torts that Plaintiff alleges. Simply reading the allegedly false December 16 letter, in itself, is not a harm and thus not an "effect" for purposes of establishing jurisdiction. The only "effects" of Defendants' allegedly tortious conduct are the denial of her District of Columbia bar admission and any related economic or reputational injury. And as discussed, these "effects" could only have occurred in the District of Columbia and not New York. *See Villanova v. Harbilas*, 08 CIV. 10448, 2010 WL 1640187, at *5 (S.D.N.Y. Apr. 13, 2010) (effect of tort was in Pennsylvania for fraud claim arising out of defendant's improper use of funds in Pennsylvania account).[23]

---

[22] Plaintiff supplements her constructive fraud and misrepresentation claim in her opposition brief, pointing to multiple instances of communication between herself and Defendants, all of which were attached to affidavits as part of Defendants' motion. But, there is no specific jurisdiction over these claims for the same reasons jurisdiction is lacking for her fraud claim arising out of the December 16 letter: namely, the effect of such tort was not located in New York.

[23] Furthermore, the Amended Complaint fails to allege that Plaintiff relied on Defendants' alleged misrepresentation, *i.e.*, the December 16 letter, in New York. *See Miller Inv. Trust v. Xiangchi Chen*, 967 F. Supp. 2d 686, 696 (S.D.N.Y. 2013) (no personal jurisdiction under CPLR § 302(a)(3) where plaintiffs failed to allege that they relied on allegedly false misrepresentation while in New York). The Amended Complaint also suggests that even if Plaintiff read and relied on the December 16 letter in New York, that reliance did not cause her injury, *i.e.*, the termination of her character and fitness application, because that termination had occurred even *before* Plaintiff read the letter. According to the December 16 letter, which is incorporated by reference in the Amended Complaint, Plaintiff's character and fitness application was to be terminated if she failed to send a new attestation by January 14, 2011, which was several weeks *before* Plaintiff claims to

Therefore, the Court cannot exercise specific jurisdiction over any of the Defendants pursuant to CPLR § 302(a)(3).

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED.  The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.


SO ORDERED.


*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge


Dated: January 6, 2017
       Brooklyn, New York

---

have read the letter in New York on February 8, 2011.  (Dkt. 24-5 at ECF 2; Am. Compl. ¶ 7.)  To the extent Plaintiff now alleges that she relied on the December 16 and other letters she received from the NCBE in applying to jobs in the District of Columbia, (*see* Dkt. 25 at ECF 24), this argument also fails because, again, the "effect" of the alleged misrepresentation would be the denial of a job in the *District of Columbia*—not New York.  Thus, even accepting Plaintiff's allegations as true, nothing relevant to Plaintiff's fraud claim occurred in New York.  *See, e.g.*, *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, 156 F. Supp. 3d 348, 357 (E.D.N.Y. 2016) (situs of injury was in New York because defendants made misrepresentations in letters sent to New York, causing plaintiff to wire money, which subsequently resulted in a financial loss in New York).